Mr. & Mrs. Sidney De Leon.      No. 7854.

      —vs—                Court of Appeal.

A. J. Fabacher.          Parish of Orleans.

Dinkelspiel. J.

Dinkelspiel. J.

Plaintiffs, husband and wife, bring this suit against defendant alleging that one Tiburtio Sa Freire a non resident, came to this City during the year 1918, meeting Grover C. Mouras, brother of one of plaintiffs, residing with them at their home No. 2637 St. Philipp Street.

That Se Freire falsely represented himself to Mouras and to plaintiffs as a man of good character and habits as well as of means and social standing. That beleiving the representations made by the stranger, plaintiffs permitted him to ingreciate himself with them, their family and friends, and he boarded and lodged with them begining May 2nd. 1918.

That on or about January 30th. 1919, said Sa Freire, as he was then known to plaintiffs, suddenly departed from plaintiffs home being indebted to them for about $135.00. board and lodging, and then and there, felondeiously, did take, steal and carry away with him from plaintiffs home, embezzle and appropriate to his own benefit, valuable jewelery belonging to plaintiffs, namely two ladies solitaire diamond rings, taking them from plaintiffs armoir, the value of the rings being $575.00., and then follows a description of the rings.

That immeadiately after the discovery of the disappearance of said stranger, that the rings, and also the ring of Mauras were found missing.

Plaintiffs instituted a search and notified the police with no results until they received information leading to the location of the fugitive in the State of California where they wrote to him and received an answer making a confession of his theft and admitting that he had disposed of the articles , the rings, with one A. J. Falkoner, defendant, a keeper of a negro bar room at 1035

76

Cravier Corner of Rampart Street. That they promptly gave this information to the police and the District Attorney, and about the 17th. of April, 1919, visiting defendant, they allege he confessed receiving and being in possession of the jewelery referred to, but claiming to have bought them from Ra Freire.

Plaintiffs ten aver that they are the sole owners of the rings-in question which were in the unlawful possession of defendant, stolen by Re Freire, and by him disposed of to defendant, and who, although fully informed of plaintiffs ownership, has failed and refused to surrender and deliver the two rings to them, and that his refusal and failure , aforesaid, is without lawful cause or right, and his possession of same if not totally criminal, was in bad faith under most suspicious circumstances, out of his usual line of business and bears the ear marks of fraud and colusion in order to defeat the rightful owners of the property in question. And without detailing unnecessarily the other steps taken by plaintiffs in this case to apprehend the fugative on account of the cost to bring him back from California to Louisiana, they ask for judgment for the amount of their claim and together with their petition they prayed for a writ of sequestration, gave bond and made the necessary affidavit, under the law, and the writ was issued.

Defendant, First, in answering to a rule for contempt for disobeying the orders of Court in the writ of sequestration by not producing the property, denied all the allegations in the writ, but admitted that he did purchase two certain diamond rings in good faith, having no knowledge that same were stolen, and further that he does not think that the same were stolen, but denies that he ever attempted to conceal said purchase, that he was in good faith, that he

paid a legitimate price for said rings. Further answering defendant denies that same were stolen, on the contrary, the rings, as he believed then and now was the property of Sa Freire.

A rule taken to dissolve the sequestration was taken and the writ was dissolved. Subsequently the answer admits, after a general denial, the purchase of the two rings in question. He denies that plaintiffs were the owners or that they were stolen from them; denying further that he never did conceal the purchase, that they were bought in g good faith for a valid consideration being the full value, and prays for dismissal of the suit.

An agreement to try this case and the one No. 7853, of Mauras against the same defendant was made in the following terms:- " It is agreed that the testimony now being taken shall apply to both cases, they being against the same defendant."

Defendant, Fabacher, was placed on the stand under cross examination by plaintiffs and among other statements testified, that Sa Freire visited his bar room for about a week or ten days prior to his departure from the City of New Orleans; " that he looked like a negro to me; that he spoke english, and he offered to sell on one day one of the rings claimed by plaintiffs", which ring defendant took a pawn broker in this City and finding from him the value and adding to it the sum of $15.00. so that he could make $15.00. on the transaction he bought and paid for the ring in question. The next day the same man came back to his saloon and went through the same thing with the other ring, and ascertaining the price from the dealer he made $15.00. on this ring; in other words, he paid the man for the two rings $345.00. and sold them to the pawn broker for $375.00. thus making a total of $30. on both transactions; denying that he ever bought a third ring belonging to Mouras, or that he ever saw more than

the two rings in question.

The testimony of Mouras, Mrs. Mary Mouras, Mr. and Mrs.
Sidney De Leon together with Sa Friere's letter forming
a part of the testimony proves, Sa Friere had been a
boarder in the house of plaintiffs and a roomer there for
about a year or more; that he became intimate with each
and every member of the family; that he frequented with them
places of amusement, and that he had absolute access and
the right, with the consent of plaintiffs, both husband
and wife, also the mother and a brother, to go into any
room of the establishment whenever it suited him, to do
whatever he choose, that he had always behaved himself
as a gentleman, that he was more or less an intelligent
man, speaking several languages, claiming to be a Brazil-
ian from some family there of note with large means,
having no occupation, in other words, a man of the world,
" nothing to do and plenty to do it with"; and until he
became a fugative from justice and under his own confess-
-ion a thief, these people, plaintiffs and brother; in
fact, the entire family , trusted in him implicitly ,
had every confidence in him and gave him entree, not only
to their own house but introduced him to relativesand
and friends.

The defendant, on the other hand, only knew this man for
a short period. He noticed when he entered his bar room
that he wore several diamond rings on his fingers, and
when eventually one of these rings was offered to him on
one occasion, not being a diamond merchant, he went to a
man whose business was to deal in diamonds and who under-
stood their value, who fixed a price which he subsequently
paid after the purchase by defendant from Sa Friere, so
that defendant had such right, in our opinion, to make
this transaction as he did as plaintiffs and the rest
of the family had in leaving their doors wide open and
their armoirs unlocked and give this theif an opportunity

which he finally took in stealing these rings from plaintiffs.

So, with this short history of the transaction there is one question for our solution, that is, could defendant purchase from this thief property which he the thief had stolen from plaintiffs? And we answer that question in the negative, and we are supported by in this by the articles of the Civil Code.

Art. 2950. Title of Depositor. Things Stolen.- "We cannot require him who made the deposit to prove that he was the owner of the thing. Yet if he discovers that the thing was stolen and who the owner of it is, he must give him notice of the deposit, requiring him to claim within due time.

If the owner, having received due notice, neglects to claim the deposit, the depository is fully exonerated upon returning it to the person from whom he received it".

Art. 2313. " A thing XXXXX unduly received must be restored in kind."

Art. 2452. "Sale of a thing belonging to another is null."

In 5 Court of Appeal. p. 165. Hiddleston Kenner vs. Pasquale Corannuzza, the syllabus read: " The sale of a thing belonging to another is null and the thing cannot be alienated pending the action so as to prejudice the right of the claimant."

Cyc. Vol. 35. p. 361. G. "Property procured by wrongful or felonious acts.

XXXXXX " A bona fide purchaser is not protected as against the claim of the true owner where the seller has obtained possession of property by wrongful acts, if without any delivery by or consent on the part of the owner as where were the goods obtained by trespass. The rule has also been laid down that a bona fide purchaser is not protected where the vendor obtained the goods by means of a felony". Citing numerous authorities.

In this Court plaintiffs have prayed for an amendment of the judgment of the lower Court **claiming** $575.00. as the value of the property stolen. We cannot allow them this sum, but we must amend the judgment by allowing plaintiffs the same amount that defendant received from the pawn broker for the two rings in question which is the sum of $275.

It is therefore, ordered, adjudged and decreed, that the judgment of the lower Court be amended, and that plaintiffs do now have judgment against defendant in the full sum of $275.00., with interest from judicial demand. Defendant to pay costs of both Courts. And as thus amended the judgment is affirmed.

    —Judgment amended and Affirmed—